UNITED STATES of America,
Plaintiff-Appellee,

v.

Douglas RIVERA, et al.,
Defendants-Appellants.

Nos. 86–2086, 86–2100, 86–2124.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1987.

Decided July 20, 1987.

John M. Cutrone, Chicago, Ill., for defendants-appellants.

Vilija A. Bilaisis, Asst. U.S. Atty., (Anton Valukas, U.S. Atty.) U.S. Atty's Office, Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

BAUER, Chief Judge.

Douglas Rivera, Betty Martinez de Colon and Arturo Robles were convicted individually of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and of conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 841. Rivera received a seven year sentence to be followed by a special parole term of ten years, after conditionally pleading guilty pursuant to FED.R.CRIM.P. 11(a)(2). Rivera reserves his challenges on appeal to the district court's denial of his motion to suppress evidence and his motion to sever his case from Colon's. Colon was found guilty after a jury trial and sentenced to seven years in prison. She challenges the denial of the motion to suppress as well as the sufficiency of the evidence used to convict her of conspiracy. Robles pled guilty and was sentenced to fifteen months in prison to be followed by a six year special parole term. Robles challenges the imposition of the special parole

term. The appeals have been consolidated for disposition. We affirm the convictions and Robles' sentence for the reasons which follow.

## I.

Pursuant to an ongoing investigation, agents from the Drug Enforcement Agency ("DEA") tailed defendants Douglas Rivera and Betty Martinez de Colon as they drove around the northwest side of Chicago on September 25 and 26, 1985. While under surveillance, Rivera and Colon behaved in a manner to arouse suspicion of narcotics activity. They took indirect routes, switched rented cars on occasion and stopped several times to make and receive phone calls. Rivera and Colon eventually drove a rented car to the O'Hare Plaza Hotel. Rivera went to the parking lot of the hotel and opened the trunk of a Monte Carlo with a key in his possession. He placed a black briefcase in the trunk, removed a tan plastic bag and proceeded to Room 422 with the bag. Soon thereafter, Rivera returned to the Monte Carlo with the bag. Meanwhile, Colon made calls from a bank of telephones in the lobby and left in the rented car. She picked up Rivera in the parking lot. Rivera then dropped Colon off at a restaurant and picked up defendant Arturo Robles on a street corner. Robles rode with Rivera for a short time and then left, entering his own car, with the tan plastic bag.

Two agents followed Robles and a chase ensued, during which Robles discarded the tan bag. Robles was arrested; agents retrieved the bag and found it contained cocaine. Rivera and Colon were arrested in the rented car shortly thereafter. The rented car was found to contain approximately $12,000. A search of Rivera incident to arrest revealed a car key and a hotel room key. The car key was believed to fit the Monte Carlo in the parking lot of the O'Hare Plaza Hotel and the hotel key appeared to be from Room 422 of the O'Hare Plaza Hotel. When agents returned to the hotel room with the key, they saw a "Do Not Disturb" sign on the door and heard television or radio noises from within. The agents feared another confederate might be inside the room and entered it without a warrant. Once inside, they found three suitcases, which they seized. The room was otherwise empty and unoccupied.

After ascertaining that the key found on Rivera fit the Monte Carlo, agents seized the car and drove it to the DEA garage. At the garage, the car was exposed to a drug-sniffing dog, which "alerted" to the trunk area of the car. The agents then searched the car without a warrant and found approximately three kilograms of cocaine in the trunk. A drug-sniffing dog also "alerted" to the seized suitcases. The agents obtained a warrant for the suitcases and recovered a large amount of money along with packaging material similar to that used to package the recovered cocaine. Three days later, agents conducted a more thorough search of the Monte Carlo, retrieving nine additional packages of cocaine.

Initially, the district court granted the motion to suppress, finding that the entry into the hotel room and the subsequent seizure of the luggage was unlawful. The court reserved ruling on the legality of the searches of the Monte Carlo. After hearing further testimony, the court denied the motion in its entirety. The court also denied Rivera's motion for severance, which was based on his allegation that if his case was severed from Colon's, she would testify in conformity with a previous statement to police: that the cocaine was hers, that Rivera had nothing to do with it, and that she was selling the cocaine to support her family since she had been abandoned by her husband. Rivera entered a conditional guilty plea, subject to this appeal of the adverse determinations of the two pretrial motions.

Defendants Rivera and Colon both object to the warrantless entry into the hotel room and the subsequent search and seizure of the suitcases.[1] Rivera also chal-

---

1. The government argues that Rivera lacks standing to object to the search of the suitcases.

In light of our determination that the search was lawful in addressing Colon's objections, we

lenges the warrantless search and seizure of the Monte Carlo. Aside from her Fourth Amendment claim, Colon claims that the evidence was insufficient to convict her of conspiracy. In addition, Robles challenges the sentence he received.

## FOURTH AMENDMENT CLAIMS

A. *The Hotel Room*

■■■ The Fourth Amendment prohibits warrantless and nonconsensual entry into a person's home. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). A hotel room, as a temporary abode, is similarly protected from arbitrary searches and seizures. *See Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *United States v. Diaz,* 814 F.2d 454, 458 (7th Cir.1987). Searches and seizures undertaken without warrants are presumed arbitrary and unreasonable, subject "to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One such exception is the exigent circumstances doctrine which recognizes that "warrantless entry by criminal law enforcement officials may be legal when there is a compelling need for official action and no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978); *United States v. Dowell,* 724 F.2d 599 (7th Cir.), *cert denied,* 466 U.S. 906, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984). The doctrine applies where agents fear imminent destruction of the evidence. *Ker v. California,* 374 U.S. 23, 39–40, 83 S.Ct. 1623, 1632–33, 10 L.Ed.2d 726 (1963).

■■■ Since the doctrine is an exception to the general warrant requirement, the government had the burden of showing that the warrantless entry into the hotel room fits within the exception. *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970). The government must show more than a subjective fear of imminent destruction of evidence; the fear must be objectively reasonable.

*United States v. Dowell,* 724 F.2d at 602. In determining whether the agents reasonably feared imminent destruction of the evidence, the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured. *United States v. Miller,* 800 F.2d 129, 133 (7th Cir.1986). In other words, "were the police unreasonable in not getting a warrant in the circumstances that confronted them?" *Llaguno v. Mingey,* 763 F.2d 1560, 1564 (7th Cir.1985) (en banc).

■■■ When the agents approached the hotel room they saw a "Do Not Disturb" sign on the door and heard sounds of a television or radio from within. Since the officers had information that large quantities of cocaine were involved and believed that the hotel room near the airport was the central locus of the transactions, the district court found that the officers had probable cause to believe that there was additional contraband in the room. The district court also found that the officers reasonably believed that the hotel room was occupied by other persons who might destroy the contraband.

Appellants' objections to the behavior of the agents rest largely on hindsight. Rivera argues that since all known defendants were then in custody, it was unreasonable to believe that the room was occupied. But the agents could not know, to a certainty, the final number of those involved. The room had not been under surveillance prior to the time the agents approached and heard sounds from within. Given the information the agents then possessed, it was not unreasonable to fear that a fourth or fifth conspirator might be inside the room, ready to destroy the evidence if his or her compatriots did not return as planned.

Rivera urges that the agents could have procured a telephonic warrant, pursuant to FED.R.CRIM.P. 41(c) However, once the agents believed that another conspirator might be inside the room with the contra-

do not address the standing issue with respect to Rivera.

band, they reasonably feared imminent destruction of the evidence. Once the exigent circumstances arose, it is impossible to say whether the agents had five minutes or five hours. They had no way of knowing when destruction of the evidence might occur. We therefore agree that the facts available to the agents at the time established exigent circumstances sufficient to allow the warrantless entry into the hotel room.

B. *The Search and Seizure of the Suitcases*

■ Once a room is legally entered under exigent circumstances, a subsequent search or seizure of items in the room must be justified by a warrant or an exception to the warrant requirement. *United States v. Kunkler,* 679 F.2d 187 (9th Cir.1982). After entering the room, the agents saw the suitcases, believed them to contain contraband, and seized them under the plain view doctrine. The doctrine allows the government to seize evidence in plain view when (1) the initial intrusion was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent. *Perlman v. City of Chicago,* 801 F.2d 262, 265 (7th Cir.1986), *cert. denied* — U.S. ——, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987); *Moya v. United States,* 761 F.2d 322, 326 (7th Cir.1984). Appellant Rivera argues both that the discovery was not inadvertent and that the incriminating nature of the suitcases was not immediately apparent.

In *Coolidge v. New Hampshire,* 403 U.S. 443, 470, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971) (plurality opinion), the Supreme Court required that evidence seized under the plain view doctrine must be inadvertent. The inadvertency requirement limits the use of the doctrine to those situations in which the government could not have procured a warrant through a magistrate. *Coolidge* involved the government's attempt to justify a warrantless seizure of an automobile, parked adjacent to the defendant's house, under the plain view doctrine. The court found the seizure could not be justified under the doctrine. Since the police knew in advance what they were looking for and where it was—there was no need to excuse them from the requirement of obtaining a warrant.

■ The continued validity of the inadvertency requirement of the plain view doctrine is not at all clear. *See Texas v. Brown,* 460 U.S. 730, 743, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). What is clear, however, is that the requirement has little relevance to an entry due to exigent circumstances. When agents lawfully enter an abode due to fear of imminent destruction of evidence, it is useless to ask again whether they could have secured a warrant in advance. The discovery was inadvertent to the extent that the agents did not place themselves in a legal vantage point *for the purpose of* "discovering" evidence that they were previously aware of; this is all that is required. *See, Texas v. Brown,* 460 U.S. at 743, 103 S.Ct. at 1544; *see also United States v. Thompson,* 700 F.2d 944, 951 (5th Cir.1983), *appeal after remand,* 720 F.2d 385 (1983). ("The fact that the agents expected to find contraband, which is easily destroyed, on the premises does not preclude operation of the plain view doctrine....")

■ Rivera also contends that the criminal nature of the luggage was not immediately apparent. The district court found that the agents had probable cause to believe that contraband was in the room. The only question then, is whether it was immediately apparent that the luggage might contain contraband. The "immediately apparent" requirement does not mean that the criminal nature of the items seized must be apparent at first glance; rather it requires that the agents had "probable cause to associate the property with criminal activity." *Texas v. Brown,* 460 U.S. 730, 741–42, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983); (quoting *Payton v. New York,* 445 U.S. 573, 578, 100 S.Ct. 1371, 1376, 63 L.Ed.2d 639 (1980)); *United States v. Schire,* 586 F.2d 15, 19 (7th Cir. 1978). The agents here noted the suitcases and knew the following: first, that this may have been a large-scale cocaine operation; second, that rooms near airports are

often used by drug-runners to facilitate distribution; and third, that Rivera had been seen carrying what appeared to be narcotics to and from the room. Thus, with the information they had before the search, the agents ascertained that the suitcases probably contained contraband or evidence thereof. Accordingly, the seizure of the suitcases was justified under the "plain view" doctrine.

▌ Once the suitcases were seized, agents brought them to the DEA office and exposed them to a narcotics-sniffing dog. After the dog "alerted", agents prepared an affidavit in support of probable cause and secured a warrant for their search. The only objection raised to the warrant is that the affidavit was tainted because it depended on information secured in violation of the Fourth Amendment. Since we have determined that the room entry and the subsequent seizure were legal, the only remaining question is whether subjecting the luggage to a "sniff-test" was a warrantless search. It was not. *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Klein,* 626 F.2d 22 (7th Cir.1980).

## C. *The Monte Carlo*

▌ Next, Rivera objects to the warrantless seizure and subsequent searches of the Monte Carlo. The automobile exception allows a warrantless search and seizure of a car so long as the search is justified by probable cause. *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The exception recognizes both the inherently mobile nature of an automobile and the decreased expectation of privacy that an individual has in a car. *Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). This is so even if the car is parked and stationary when agents find it. *Id.; Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The district court found that the agents had probable cause to believe the car contained contraband.

The agents seized the car after watching Rivera retrieve what appeared to be narcotics from the trunk and after noting that the car matched the key found on Rivera when he was arrested. Thus, when the agents found the Monte Carlo, they could have legally searched it. But they did not. Instead, the officers removed the car to the DEA garage and a "sniff-test" particularized the area to be searched. After receiving a tip that a more intense search of the car could yield more contraband, another "sniff-test" was conducted, and the body of the car was subsequently searched. The delay does not invalidate either search.

Under *United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), removing a legally seized car to DEA headquarters and there performing a search, is reasonable under the Fourth Amendment. The scope of the second search of the car was similarly reasonable. The second search was initiated once agents received a tip and a dog had alerted at the car (after the cocaine in the trunk had been removed). The agents removed carpeting and moved the back seat and a portion of the rear deck, revealing what appeared to be a secret compartment. The agents then removed the back seat and found the additional cocaine. This was not an "unrestrained" search as defendant Rivera argues. It was a reasonably restricted search, justified by probable cause. The agents' actions were justified by probable cause at all stages and hence, the search and seizure were reasonable.

## II. SUFFICIENCY OF THE EVIDENCE

▌ Colon contends that the evidence was insufficient to establish her participation in the conspiracy. A defendant's challenge to the sufficiency of the evidence will be successful only if, after viewing all of the evidence in a light most favorable to the government, and drawing all reasonable inferences therefrom, we conclude that a rational trier of fact could not have found the essential elements of the crime, beyond a reasonable doubt. *Jackson v.*

*Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■■ The evidence connecting Colon to the conspiracy was overwhelming. First, the evidence included Colon's one-time confession to the crime. She was seen riding in the various rented cars with defendant Rivera, taking circuitous routes and stopping often to place or receive telephone calls. Her luggage, newly arrived from Florida, contained $57,000 in cash along with packaging material strikingly similar to that used to package the narcotics. We therefore find that the evidence connecting Colon to the conspiracy to distribute cocaine was sufficient to sustain the verdict.

## III. THE MOTION FOR SEVERANCE

Next, Rivera claims that the court improperly denied his motion to sever his trial from Colon's. Colon had confessed to an agent that the narcotics were hers and that Rivera had nothing to do with them. Rivera argued that if severed, Colon would testify in conformity with her previous statement to police and exonerate Rivera.

■■■■ The district court's denial of a motion for severance will be affirmed absent an abuse of discretion. *United States v. Pavelski,* 789 F.2d 485, 491 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 322, 93 L.Ed.2d 295 (1986). In deciding a motion for severance, the district court should balance the interests of the defendant in severance against the government's interest in judicial economy. Before denying the motion, the district court directed the government to elicit testimony regarding Colon's initial statement to the agents, implicating herself and exculpating Rivera. There is no indication that Colon's testimony at Rivera's severed trial would have gone any further in exculpating Rivera than her initial statement. The district court thus struck a reasonable balance between Rivera's interest in having the jury hear the exculpatory statement, and the government's interest in conducting a joint trial. We find no abuse of discretion.

## IV. THE SPECIAL PAROLE TERM

■■ The sole issue that Robles presents on appeal is that the imposition of a special parole term was unconstitutional as violating the separation of powers doctrine. Robles was convicted of possessing cocaine, a Schedule II controlled substance, with intent to distribute. 21 U.S.C. § 841. Robles was also convicted of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. A conviction under Section 841 requires the court to "... impose a special parole term of *at least three years...*" 21 U.S.C. § 841(b)(1) (emphasis added). Robles was sentenced to two concurrent fifteen month sentences to be followed by a six year special parole term. Robles argues that the special parole term is an unconstitutional delegation of power to the judiciary because it provides no maximum term of parole, nor does it specifically delegate to the judiciary the discretion to determine the maximum term.

Robles concedes that we have addressed this precise issue before, and decided it adversely to him. *See United States v. Eschweiler,* 782 F.2d 1385 (7th Cir.1986); *United States v. Bridges,* 760 F.2d 151 (7th Cir.1985). Nonetheless, Robles urges us to reconsider and overrule our past precedent, adopting the reasoning of a district court in the ninth circuit, even though the district court was reversed by the ninth circuit itself. *See United States v. Tebha,* 578 F.Supp. 1398 (N.D.Cal.1984), *rev'd,* 770 F.2d 1454 (9th Cir.1985). In fact, every circuit that has addressed the issue has reached the same conclusion: the special parole term is not an unconstitutional delegation of power. *See United States v. Kuck,* 573 F.2d 25 (10th Cir.1978); *United States v. Jones,* 540 F.2d 465 (10th Cir. 1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *United States v. Sims,* 529 F.2d 10 (8th Cir.1976); *United States v. Rich,* 518 F.2d 980 (8th Cir.1975), *cert. denied,* 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976); *United States v. Martinez,* 481 F.2d 214 (5th Cir.1973) *cert. denied,* 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1974); *United States v. Simpson,* 481 F.2d 582 (5th Cir.), *cert. de-*

*nied,* 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973).

We find the previous cases well-reasoned and see no cause to disturb our prior precedent at this time. Accordingly, Robles' attack on the constitutionality of section 841(b)(1) is rejected.

## CONCLUSION

The initial entry into the hotel room was justified by exigent circumstances and the subsequent seizure of the suitcases was justified under the plain view doctrine. The search and seizure of the Monte Carlo was justified under the automobile exception. Thus, the motion to suppress evidence was properly denied. In addition, we find that the denial of the motion for severance was not an abuse of discretion. We find also that the evidence was sufficient to sustain Colon's conviction for conspiracy and that the imposition of a special parole term under section 841(b)(1) is constitutional. Accordingly, we affirm the convictions of Rivera and Colon and affirm the sentence of Robles.