UNITED STATES of America, Plaintiff–Appellee,

v.

Mitchell FOXWORTH, Defendant– Appellant.

No. 92–2710.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1993.

Decided Oct. 27, 1993.

Lawrence Beaumont (argued), Office of the U.S. Atty., Danville, IL, for plaintiff-appellee.

Brian Silverman (argued), Champaign, IL and Kevin E. Milner, Law Offices of Kevin E. Milner, Chicago, IL, for defendant-appellant.

Before CUDAHY, MANION and TIMBERS,* Circuit Judges.

MANION, Circuit Judge.

The United States of America ("government") charged Mitchell Foxworth under 21 U.S.C. § 841 with one count of possessing 489 grams of cocaine with the intent to distribute. Foxworth moved to suppress the cocaine. The district court denied the motion. Foxworth pleaded guilty, reserving the right to appeal the district court's denial of his motion. We affirm the district court in all respects.

## I. Background

Before Foxworth's arrest, the police had been investigating him sporadically over two years. The week before his arrest, the investigation intensified. On January 2, 1992, Scott Swan and John Murphy, both Champaign, Illinois police officers, went to the Super 8 Motel in Champaign. They had received information that two cars (a gray Chevrolet and a blue Monte Carlo) located in the parking lot contained cocaine. After observing the two cars, the officers secured a search warrant for a residence in Urbana, Illinois. (The connection between the two cars and the residence is not clear from the record.) During their search of the residence, they uncovered four ounces of crack cocaine. At the search scene, they separately interviewed Alvin Ervin and Kevin Cooper, both of whom described how they had

* Hon. William H. Timbers, Circuit Judge for the United States Court of Appeals, Second Circuit, sitting by designation.

purchased cocaine from Foxworth at the Super 8 Motel in Champaign. After agreeing on a price, Foxworth sent an associate from the motel room to a car in the parking lot to obtain the drugs from the trunk. They described Foxworth as being "really cautious" in his drug transactions.

On January 5, 1992, Officer Swan received a call from the desk clerk of the Thrift Hotel in Urbana. The desk clerk informed Swan about suspicious activity occurring in a room rented to someone the police knew as one of Foxworth's associates. Officer Swan and a few other officers placed the Thrift Hotel under surveillance. They saw Foxworth drive away from the hotel. Later, Swan observed a man go from the hotel room to a blue Monte Carlo and place something in its trunk. The blue Monte Carlo was parked next to a gray Chevrolet; the cars were the same ones parked at the Super 8 Motel in Champaign on January 2. The police obtained a search warrant for the Monte Carlo, in which they found three ounces of crack cocaine and drug paraphernalia.

On January 8, 1992, the day of Foxworth's arrest, Cray Butler, a reliable police informant, telephoned Officer Swan from a room in the Motel 6 in Kankakee, Illinois. Foxworth was to arrive later that day to make a drug deal with another person. Butler told Swan that the same gray Chevrolet was in the parking lot with a quarter kilogram of cocaine in the trunk. Swan and approximately nine other officers arrived at the Motel 6 and placed it under surveillance. Swan then telephoned Butler who gave a detailed description of the anticipated drug transaction and procedure. Butler said the drugs were still in the gray Chevrolet. Butler told Swan that after Foxworth completed negotiating a price with his buyer, Foxworth would drive to the motel in a yellow Cadillac with out-of-state license plates. Foxworth would send one of his associates to the trunk of the gray car to get the cocaine and bring it back to the room. In the room, Foxworth and his associates would bag the cocaine into smaller amounts. The cocaine would either remain in the room or be returned to the gray Chevrolet.

A short time later, Swan and the officers noticed a yellow Cadillac with Arizona plates arrive at the motel. Foxworth and two others exited the car and went into the motel room occupied by Butler. Shortly thereafter, a man left the room, went to the gray Chevrolet, got something from its trunk, and returned to the room. Another man later came out of the room and placed something into the trunk of the gray car. Two men in a black Ford Mustang then arrived at the motel parking lot and went into the room occupied by Foxworth and the others. One of Foxworth's associates left the room and opened the hood of the yellow Cadillac.

Several minutes later, two men in a blue Ford Fiesta arrived at the motel. The passenger got out of the car and went into the room, while the driver drove the car around the parking lot. When the passenger returned, he got back into the Fiesta, and they both drove across the street to a restaurant and went inside. A few minutes later, one of the men walked back to the motel and entered the room. He soon left the room and returned to the restaurant, and he and the other man drove the Fiesta back to the motel. One removed something from the trunk of the car, and they went into the room.

The police next observed three men leave the motel room and walk to the yellow Cadillac. They appeared to be doing some work under the hood of the vehicle. One of the men ran from the Cadillac back to the room. Within minutes, he ran back to the car. At that point, the police determined the group was about to leave and moved in to make the arrests. They had no warrant. They detained the three men outside, knocked on the door of the room, announced their presence, and rushed in. After arresting Foxworth, the police asked him whether he had the keys to the gray Chevrolet. He said no. The police then asked whether they could have his keys to try and unlock the car. He said that he "didn't care." The police took the keys, opened the trunk, and found 489 grams of cocaine. No other drugs were found in the motel room, on the suspects, or in the cars belonging to those arrested.

Foxworth moved the district court to suppress the cocaine seized from the trunk of

the gray Chevrolet. After listening to the testimony and argument at the suppression hearing, the court denied the motion. Foxworth then entered into a conditional plea of guilty, reserving the right to appeal the court's ruling on his motion. The court sentenced Foxworth to ten years in prison and six years supervised release. Foxworth timely appealed.

## II. Analysis

We have jurisdiction, 28 U.S.C. § 1291, to consider the three points Foxworth raises on appeal: (1) whether the police had probable cause to arrest him without a warrant; (2) whether exigent circumstances existed to permit the police officers' warrantless entry into his motel room; and (3) whether the police had probable cause to conduct the warrantless search of the gray Chevrolet.

In reviewing a district court's decision to deny a motion to suppress, "[w]e give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990). We will disturb a district court's ruling only if we find it clearly erroneous. *United States v. Spears*, 965 F.2d 262, 269 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992).

### A. Warrantless Arrest

In his first point on appeal, Foxworth contends that the police lacked probable cause to arrest him without a warrant. He claims the evidence demonstrates that the police had only a bare suspicion that he was involved in criminal activity. That, he maintains, is insufficient to justify his arrest.

■ The determination of probable cause involves "a practical, common-sense decision whether, given all the circumstances set forth ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Although probable cause cannot be based on mere suspicion, it need not reach the level of a virtual

certainty. *See id.* at 244 n. 13, 103 S.Ct. at 2335 n. 13; *United States v. Burrell,* 963 F.2d 976, 986 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). In short, "[p]olice officers have probable cause to make an arrest where 'the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *United States v. Levy,* 990 F.2d 971, 973 (7th Cir.1993) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)).

■ Based on the totality of the circumstances, we agree with the district court that the police officers had probable cause to arrest Foxworth. The police had more than a mere suspicion that Foxworth was involved in criminal activity. The police learned from Alvin Ervin, Kevin Cooper, and Cray Butler the method Foxworth followed in selling drugs: He would have a car, containing drugs, parked in a motel parking lot; after reaching an agreement with his buyer, Foxworth would send an associate out to the car to retrieve the drugs. During their surveillance of the Motel 6 on January 8, 1992, the police observed Foxworth follow his standard procedure. Moreover, as Butler had informed the police, a gray Chevrolet would be parked in the parking lot, which it was; this was the same car Officer Swan had seen on two earlier occasions parked next to the blue Monte Carlo, in which the police later found drugs. According to Butler, the gray Chevrolet contained cocaine. Butler also told the police that Foxworth would arrive in a yellow Cadillac with out-of-state license plates. Foxworth so arrived.

Other suspicious events also took place, which only added to the police officers' reasonable belief that Foxworth was involved in a drug deal. Soon after Foxworth's associate obtained something (presumably drugs) from the trunk of the gray Chevrolet, a black Ford Mustang arrived at the motel. Two men exited the car and went into the room occupied by Foxworth and the others. Shortly thereafter, a blue Ford Fiesta showed up. One man got out of the car, went into the

room, and soon returned to the car. The driver then drove the car across the street to a restaurant. One of the men walked back to the motel. He then returned to the restaurant, and he and the other man drove back to the motel. One removed something from the car and both men went into the motel room. Soon afterwards, three of the men left the room and went to the yellow Cadillac. The police concluded that the group was about to depart and moved in to make the arrests. Based on these circumstances, the police had probable cause to arrest Foxworth. They witnessed sufficient events to lead a prudent police officer to believe that Foxworth and the others had committed or were committing a crime. *Levy,* 990 F.2d at 973.

■ At oral argument, Foxworth argued that the police had time to secure a search warrant because they had the motel under surveillance for two hours and a courthouse was within a reasonable distance from the scene. Yet, although the police had the motel under surveillance for two hours, the focus of their concern was Foxworth, who did not arrive until sometime after the police had begun their observations. Only after the police had observed the events at the motel did they gather the necessary probable cause to arrest Foxworth. By then, people and drugs were moving quickly. The suspects apparently were about to leave when arrested. Based on the evidence of record, nothing indicates that the police had sufficient time to secure the warrant after they had obtained probable cause. The police were reasonable in acting when Foxworth and the others appeared ready to leave. Thus, in light of the circumstances that confronted them, the police were reasonable in deciding not to delay the arrest in order to get a warrant.

### B. Warrantless Entry

In his second point on appeal, Foxworth asserts that no exigent circumstances existed to permit the police officers' warrantless entry into the motel room. As such, he maintains that his arrest in the room should be disallowed as well as the subsequent search of the gray Chevrolet.

■ The Fourth Amendment to the United States Constitution protects a person's right to be free from warrantless intrusions into his home. U.S. Const. amend. IV; *United States v. Rivera,* 825 F.2d 152, 156 (7th Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). The Fourth Amendment protection also applies to warrantless intrusions into motel rooms when occupied as a temporary abode. *Id.* The police may, however, enter a residence or motel room without a warrant if the intrusion falls within one of the established and well-delineated exceptions to the warrant requirement. *Id.* One such exception is the exigent circumstances doctrine. Exigent circumstances are defined as a " 'compelling need for official action and no time to secure a warrant.' " *Id.* (quoting *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978)). We determine the validity of a warrantless entry by objectively examining the reasonableness of a police officer's belief that he faced exigent circumstances and, therefore, lacked sufficient time to obtain a warrant. *United States v. Patino,* 830 F.2d 1413, 1415–16 (7th Cir.1987).

The police entered the motel room shortly after detaining the three suspects near the yellow Cadillac. Foxworth contends that the police did not need to enter the room, but could have arrested him and the others after they had left the room. Under different circumstances, that may have been a viable option for the police. Yet, we must analyze the existence of exigent circumstances from the perspective of the officers at the scene. *Id.* The question we must answer is not what the police could have done, but whether they had the reasonable belief that there was a compelling need to act and no time to obtain a warrant. *See id.; Rivera,* 825 F.2d at 156.

■ The police were not acting within a controlled environment, as they would have been, for example, observing a reasonably stable storefront operation. They were instead facing circumstances that were rapidly progressing and, for the most part, out of their control. The officers could reasonably have believed that a crime had been or was being committed. There were about nine police officers and seven suspects. They

were in a public place. The suspects had separated themselves into two groups: three were outside the room and four were inside the room. The police could have reasonably been concerned about the potential danger they faced and the potential danger to the public should they attempt to arrest the suspects as they left the motel room. Rather than risk potential danger to themselves and to the public, the police could have reasonably concluded that arresting three suspects while they were outside, then arresting the other four while they were confined in the room, was the safest and most efficient way to execute the arrest. By moving quickly when they did, the police brought the situation under control, reducing the chances of a dangerous confrontation between themselves and the suspects. Entering the motel room also reduced the chance of removal or destruction of evidence. Accordingly, after viewing the factual and practical considerations facing the police officers, we conclude that the officers had reason to believe that they faced exigent circumstances and lacked sufficient time to obtain a warrant before they entered the motel room.

## C. Warrantless Automobile Search

In his third and final point on appeal, Foxworth maintains that the police lacked probable cause to conduct the warrantless search of the gray Chevrolet that was parked in the motel parking lot. Because Foxworth claims probable cause was absent, he urges the suppression of the cocaine found in the trunk of the car.

A police officer may conduct a warrantless search of an automobile only if he has probable cause to believe the car contains contraband or evidence of a crime. *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir.1992). Two considerations justify the automobile exception: the lessened privacy expectation a person has in a car, as opposed to his home, and the ready mobility of a car. *See California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985). These two justifications come into play "[w]hen a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not

regularly used for residential purposes—temporary or otherwise...." *Id.* at 392, 105 S.Ct. at 2070.

The considerations underlying the automobile exception apply in this case. First, the police found the gray Chevrolet in the motel parking lot, a place readily accessible to the public and not generally thought of as a place normally used as a residence. *See id.* at 391–92, 105 S.Ct. at 2069–70. One of Foxworth's associates could have moved the car at any time. Second, the police had probable cause to believe that the gray Chevrolet contained evidence of drug dealing. In *Rivera*, we gave approval, albeit in dicta, to a similar automobile search. We stated: "The agents seized the car after watching Rivera retrieve what appeared to be narcotics from the trunk and after noting that the car matched the key found on Rivera when he was arrested. Thus, when the agents found the Monte Carlo, they could have legally searched it. But they did not." *Rivera*, 825 F.2d at 158.

Although our statement in *Rivera* is dicta and is not binding authority, it still adds guidance to our conclusion here that the police conducted a legal search of the gray Chevrolet. Cray Butler, a reliable police informant, told Officer Swan that the gray Chevrolet contained one-quarter kilogram of cocaine. Swan had seen the same car parked next to the blue Monte Carlo at the Super 8 Motel on January 2, 1992. According to Alvin Ervin and Kevin Cooper, they had purchased several ounces of cocaine from Foxworth at the Super 8 Motel. The drugs came from a car in the parking lot. Officer Swan also saw the gray Chevrolet parked next to the blue Monte Carlo at the Thrift Hotel on January 5, 1992. A search of the blue Monte Carlo later that day uncovered three ounces of crack cocaine.

Apart from the appearances of the gray Chevrolet in the other parking lots, during the surveillance of the Motel 6 on January 8, 1992, the police saw one of Foxworth's associates leave the motel room and take something out of the trunk of the gray Chevrolet. Later, one of the people in the room put something back into the trunk. Given these factors, the police had sufficient probable cause to believe the car contained contra-

band. As a result, their warrantless search was permissible.

## III. Conclusion

The district court properly denied Foxworth's motion to suppress, and the district court is AFFIRMED.