UNITED STATES of America,
Plaintiff–Appellee,

v.

Sergio ROBLES, also known as Felix
Luis Rivera, and Luis Cruz,
Defendants–Appellants.

Nos. 94–1410, 94–1411.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 3, 1994.

Decided Oct. 19, 1994.

Jonathan C. Bunge, Juanita S. Temple (argued), Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S. in No. 94–1410.

John M. Beal, Chicago, IL, for Sergio Robles.

Barry Rand Elden, Asst. U.S. Atty., Jonathan C. Bunge, Juanita S. Temple (argued), Office of the U.S. Atty., Crim. Receiving, Appellate Div. Chicago, IL, for U.S. in No. 94–1411.

Michael G. Logan (argued), Chicago, IL, for Luis Cruz.

Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Sergio Robles and Luis Cruz were charged with one count of conspiracy to possess with intent to distribute kilogram quantities of cocaine in violation of 21 U.S.C. § 846 and two counts of distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1). Robles and Cruz filed a joint motion to suppress evidence obtained at their residence. After the district court denied the motion without a hearing, each pleaded guilty but reserved the right to appeal the decision. The district court's denial of the suppression motion is now before this court. We vacate and remand.

## FACTS

In January 1994 a cooperating individual (CI) working with the Drug Enforcement Agency (DEA) met Sergio Robles and the two discussed a sale of cocaine. Robles informed the CI that he, his common-law wife, Yamileth Arango, and her brother, Luis Cruz, were able to obtain Columbian cocaine. On May 20, 1993, Robles contacted the CI and offered to sell him three kilograms of cocaine. The next day, the CI contacted the DEA, and then discussed the deal further with Robles. The CI agreed to meet Robles at a gas station at Belmont and Kostner in Chicago, Illinois. As instructed, the CI paged Robles upon his arrival at the gas station. After Robles arrived, the CI en-

tered Robles' car and they drove around the block. Robles' told the CI he had thirty kilograms of cocaine at his residence.

The CI, now driving an undercover car, followed Robles to Barry and Kostner, a few blocks away from the gas station. Robles told the CI to wait there, and Robles proceeded to a building at 3000 N. Lowell where surveillance agents saw him drive into a garage unconnected to the residence. Detention Hearing and Preliminary Examination Transcript at 47–48. Agents observed Robles exit the garage with Cruz in the car, and the two drove to where the CI was waiting. The CI followed them as they drove up and down side streets. At Keating just south of Belmont, about ¾ miles from the defendants' residence, Robles exited his car and handed the CI a black plastic bag (containing three kilograms of cocaine). After Robles instructed the CI to pay Cruz, the arrest signal was given and Robles and Cruz were arrested.

After the arrest, DEA agents immediately returned to 3000 N. Lowell with Robles and Cruz. The agents did not have a search warrant. According to the agents, they approached the front door, knocked and identified themselves. They observed through a window two children and three adults in the living room, but no one answered the door.[1] The agents then went to the building's back door and entered through an unlocked door. Their rationale for the search was exigent circumstances, to prevent the destruction of cocaine that Robles claimed was in the house by those present inside the residence. The agents scanned the apartment for others and gathered together all those in the building.[2]

At the point after the agents entered the home, the stories diverge. The government claims that Robles' wife, Yamileth Arango, arrived at the residence shortly after it was secured. An agent informed her of the arrests and asked if she lived there. According to agents, Arango stated she lived there with her children and she consented to a search of the apartment. Agents found four kilograms of cocaine in an open basement closet in a black plastic bag and over $20,000 in a paper bag next to the drugs. Robles asserts that the agents searched the residence without obtaining Arango's consent, claiming that agents had already exited the apartment with the black plastic bag by the time Arango returned from picking up her children at school.

The defendants made a pre-trial motion to suppress with supporting affidavits. The government responded with a supporting affidavit, a DEA report detailing the events of the arrest, and a supplemental affidavit of Agent Wiegman. Based upon the affidavits and DEA report, the district court denied the defendants' motion to suppress without a hearing. The defendants pleaded guilty to the indictment but reserved the right to challenge on appeal the district court's ruling on the motion. The district court sentenced Robles and Cruz to 10 years of imprisonment and five years of supervised release.

## DISCUSSION

■ Robles and Cruz make alternative yet related arguments. They claim that the district court erred either in denying their joint motion to suppress or in failing to hold an evidentiary hearing on their motion. In reviewing a denial of a suppression motion, this court will disturb a district court's factual findings only if the appellant establishes clear error. *See United States v. Durman,* 30 F.3d 803 (7th Cir.1994); *United States v. Montgomery,* 14 F.3d 1189, 1194 (7th Cir. 1994). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994); *see United States v. Robinson,* 30 F.3d 774 (7th Cir.1994).

---

1. Robles identified those present at the residence as Cleotilde Villada, mother of Cruz and Arango, two of her grandchildren, and two women named Carmen and Maria. Robles Affidavit at 2.

2. Robles claims that he was taken to the back of the house and told by an agent that he should let him in the house to spare the children the shock of a forced entry. Robles declined. Robles Affidavit at 1. Robles then claimed the agents forced their way into the house. Similarly, Cleotilde Villada, mother of Cruz and Yamileth Arango, relates that officers broke into the basement. Villada Affidavit at 1.

As for the defendants' claim that the district court erroneously failed to hold an evidentiary hearing, "[a] trial court is required to grant a suppression hearing only when a defendant presents facts justifying relief." *United States v. Woods*, 995 F.2d 713, 715 (7th Cir.1993); *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir.1986). To resolve both of defendants' contentions, this court must examine whether there are disputed issues requiring either an evidentiary hearing or the granting of the motion to suppress.

The district court concluded, based on the totality of the circumstances, that the warrantless entry of the residence was justified by exigent circumstances. First, the court held that there was probable cause to believe more cocaine was at the residence, that others involved in the drug dealing were present at the residence, or were flight risks, and that entry was required to prevent the destruction or removal of the cocaine. Second, the court concluded that the warrantless search of the residence was proper because the agents obtained the consent of Arango. Finally, the court determined that the defendants did not have any reasonable expectation of privacy in the basement of the apartment building, a common area.

### Warrantless Entry

Warrantless searches are per se unreasonable under the Fourth Amendment, but are subject to specific exceptions. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). The exigent circumstances exception to the warrant requirement provides that a "warrantless entry by criminal law enforcement officials may be legal where there is a compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486 (1978); *see Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *United States v. Hughes*, 993 F.2d 1313, 1315 (7th Cir.1993). The government bears the burden of proving that its agents had an objectively reasonable belief that exigent circumstances existed at the time of their warrantless entry into the defendants' residence.

*See United States v. Foxworth*, 8 F.3d 540, 544 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1414, 128 L.Ed.2d 85 (1994). Here, the government asserts that agents feared the immediate destruction of evidence, namely thirty kilograms of cocaine which Robles told the CI was at the residence. To determine whether this belief was reasonable, the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured. *See United States v. Talkington*, 843 F.2d 1041, 1044 (7th Cir.1988); *United States v. Miller*, 800 F.2d 129, 133 (7th Cir.1986).

We agree with the district court that there was probable cause to believe that there was additional contraband at the residence and that the presence of other individuals might lead to the destruction of the evidence. The agents approached the defendants' residence with knowledge that Robles and Cruz obtained three kilograms of cocaine from the vicinity of the residence to sell to the CI. The agents knew that Robles told the CI that he had 30 kilograms at his residence. Also, agents were aware that at least one more co-conspirator, Arango, was not in custody and therefore could have access to the cocaine kept at the residence.

With this information, the agents knocked on the door and identified themselves as law enforcement agents. Through a window, agents observed several adults and children in the residence, but no one answered the door. The agents thereupon entered the premises through the back door because they feared that someone inside might attempt to dispose of the contraband. The potential that evidence will be destroyed, especially drugs, gives rise to exigent circumstances. *See Talkington*, 843 F.2d at 1044 ("the doctrine applies to situations where the nature of the evidence is evanescent and the agents fear its imminent destruction") (citing *Ker v. California*, 374 U.S. 23, 39–40, 83 S.Ct. 1623, 1632–33, 10 L.Ed.2d 726 (1963)); *United States v. Rivera*, 825 F.2d 152, 156 (7th Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987) (determining that it was reasonable for agents to fear that

another conspirator might be inside hotel room ready to destroy evidence if others did not return as planned).

While telephonic warrants are available, Fed.R.Crim.P. 41(c), the exigent circumstances did not arise until after the officers arrived at the residence. Once they arose, "it is impossible to say whether the agents had five minutes or five hours. They had no way of knowing when destruction of the evidence might occur." *Rivera,* 825 F.2d at 157. These facts support the district court's finding that exigent circumstances were established sufficient to validate the warrantless entry into the residence.

### Warrantless Search

■■■ Once the officers legally entered the residence under exigent circumstances, a subsequent search or seizure must be justified by a warrant or an exception to the warrant requirement. *Id.* (citing *United States v. Kunkler,* 679 F.2d 187 (9th Cir. 1982)); *see United States v. DeSoto,* 885 F.2d 354, 368 (7th Cir.1989) (under exigent circumstances, agents entered and secured residence, and then waited inside eight hours while search warrant was obtained). As we have already noted, the officers did not have a warrant. The exigent circumstances only permitted their entry and securing of the residence, and once this was complete any threat of evidence being destroyed was eliminated. *See also United States v. Bennett,* 908 F.2d 189, 192 (7th Cir.) (entry justified but separate analysis for search), *cert. denied,* 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). Therefore we must continue our analysis of the seizure of the cocaine and cash.

■■■ While securing a residence, law enforcement authorities are not required to ignore contraband or evidence of a crime if those items are in plain view. *Arizona v. Hicks,* 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987); *see United States v. Arch,* 7 F.3d 1300, 1303 (7th Cir. 1993) ("the investigating officer need not close his eyes to what he sees during the sweep, and any contraband that he observes

in plain view may lawfully be seized") (citing *Maryland v. Buie,* 494 U.S. 325, 330, 110 S.Ct. 1093, 1096, 108 L.Ed.2d 276 (1990)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1123, 127 L.Ed.2d 431 (1994). In such a case, a seizure would not violate the defendant's rights. *Id.* 494 U.S. at 330, 110 S.Ct. at 1096 (White, J. concurring) (no inadvertency required).

■■■ We have determined that the officers did not violate the Fourth Amendment in entering the residence, *see Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990) (police may seize whatever contraband they see in course of lawful search), but our inquiry goes further. During their sweep of the residence the officers found a black plastic bag containing four kilograms of cocaine and a paper bag containing $20,000 in a doorless closet. The record does not indicate how the bags were found, i.e. whether they were open and their contents readily visible.[3] Generally, a search warrant is required to open and search a package found in such a location. *United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 1656–57, 80 L.Ed.2d 85 (1984). However, "if the shape or other characteristics of the container, taken together with the circumstances in which it was seized ... proclaim its contents unambiguously, there is no need to obtain a warrant." *United States v. Cardona–Rivera,* 904 F.2d 1149, 1155 (7th Cir.1990). It is not uncommon for cocaine to be transported and sold in "bricks"—packages which are distinctively wrapped tightly in plastic and sealed with duct tape. Such packaging, under circumstances similar to those here, could render the container's incriminating characteristics immediately apparent and afford an exception to the plain view requirement. *Horton,* 496 U.S. at 136, 110 S.Ct. at 2307–08; *see Hicks,* 480 U.S. at 326–27, 107 S.Ct. at 1153–54. While the black plastic bag was similar to the bag used in the earlier delivery of cocaine, that fact alone is not enough. Black plastic bags are commonly found in many households, as are paper bags. On the record before us we cannot determine whether the contents of the bags were visible or their

---

3. The only testimony on this subject was provided by Agent Wiegman, who admits that he did not find the cocaine and could not testify as to how it was found. Tr. at 10.

incriminating characteristics immediately apparent. Therefore, we remand this issue to the district court for an evidentiary hearing to determine whether the plain view exception applies.

Finally, the defendants claim the government cannot argue that a warrant was not required because Arango consented to the search. The government concedes that there are "major factual dispute[s]" regarding the issue of consent, but claim consent is irrelevant. But as we have determined above, the seizure was not otherwise justified, so we must address the consent issue.

"[T]he consent of one who possesses common authority over [the] premises ... is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *see United States v. Evans*, 27 F.3d 1219 (7th Cir.1994); *United States v. Dorsey*, 27 F.3d 285 (7th Cir.1994) ("Consent searches are a standard investigatory technique used by law enforcement agencies."). The government claims that Arango consented to the search, pointing to an agent's conversation with her upon her return to the residence. It is undisputed that Arango resided at 3000 N. Lowell, therefore she had the authority to consent to a search of the residence.

The defendants argue that Arango could not have given her consent to the search because she did not arrive home until after the agents left the house with the plastic bag containing four kilograms of cocaine. Agents stated that after they secured the residence, Arango arrived and gave consent to enter and search the residence. The conflicting affidavits establish a material dispute between the defendants' and government's version of the events and a hearing thus is

required. *Cf. Woods*, 995 F.2d at 716. Without a hearing, we have no information upon which to review the district court's finding of facts and its judgment as to the credibility of the declarants. *Arch*, 7 F.3d at 1302 (the court must give deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses). The issue of consent is not determinable on the affidavits alone.[4]

## CONCLUSION

██ While exigent circumstances existed authorizing the officers to enter the residence, it is not clear whether they legally seized the cocaine and money. Therefore, we vacate the judgment of conviction and remand for an evidentiary hearing on the issues of whether the evidence was discovered in plain view when the agents secured the residence or whether the search was consented to by Yamileth Arango.

---

4. The district court mentions in its discussion of Arango's consent that the defendants did not submit any evidence regarding any reasonable expectation of privacy in the basement of the apartment building. The court also referred to the basement of the building as a common area. Our reading of the uncontradicted affidavits and the record indicates that the defendants' apartment encompassed both the first floor and the basement of the building. The court stated that the affidavits of Robles and Cruz stating that the basement was part of their apartment "is inadequate to establish that defendants possessed reasonable expectation of privacy in the basement of an apartment building." Opinion and Order at 7 n. 5. The agents do not dispute that the basement was accessed through the first floor apartment of the defendants. The district court's finding on this issue may also be enhanced by testimony at a hearing on this issue. If the basement is indeed part of the apartment, there is no need to inquire into the defendants' reasonable expectation of privacy in the basement because if Arango did in fact consent, her consent would encompass the entire apartment, not just part of it.