**UNITED STATES of America, Plaintiff,**

v.

**Jose Luis ROMERO, et al., Defendants.**

No. 2:96–CR–94–RL.

United States District Court,
N.D. Indiana,
Hammond Division.

June 6, 1997.

Sharon Johnson, Asst. U.S. Atty., Dyer, IN, for Plaintiff.

Lawrence H. Hyman, Ralph Meczyk, Chicago, IL, for Defendants.

## ORDER

LOZANO, District Judge.

This matter is before the court on the Motion to Suppress the Evidence Seized filed by Defendant Jose Luis Romero on January 9, 1997. For the reasons set forth below, the motion is granted.

*Background*

In March 1996 officers of the Drug Enforcement Agency ("DEA") began investigating the alleged drug activities of several of the defendants in this case. As part of this investigation undercover DEA agent Dominguez arranged to purchase 15 kg of cocaine. On December 5, 1996 Agent Dominguez met in Bridgeview, Illinois, with Defendants Navarro and Segoviano to discuss the transaction and to inspect the purchase money. After inspecting the money, Agent Dominguez learned that the drug transaction would occur at a car dealership in Hammond, Indiana. DEA agent Frank Tucci followed agent Dominguez as he went to the auto dealership in Hammond. There Agent Dominguez was

told that the drugs had been moved to a new location. Defendant Vaca entered into Dominguez's car and directed him to 3830 Butternut in East Chicago, IN, where Agent Tucci followed them. The building at that address was a 2–apartment residence.

Agent Tucci saw Agent Dominguez and Vaca go into the residence. Some time later, around 2:35 p.m., Agent Dominguez came out, followed by Vaca, who was carrying a brown suitcase. Agent Dominguez got into his car and Vaca followed him in a separate car. Dominguez and Vaca returned to the car dealership to finalize the transaction. Tucci and some of the other agents remained at 3830 Butternut conducting surveillance. Agent Dominguez communicated with Agent Tucci and told Tucci that he had met the person who controlled the source of the 15 kg of cocaine. Dominguez described this person, told Tucci that he lived in the 2nd floor of the 3830 Butternut address and that Dominguez had negotiate with him. This person was later identified as Defendant Jose Luis Romero.

At 3:00 p.m. Tucci learned that the agents had arrested several people at the auto dealership and confirmed that the suitcase carried by Vaca contained 15 kg of cocaine, which would have a street value of about $1.5 million. Tucci also learned that the agents had found a gun during the arrest at the auto dealership. The agents at the auto dealership also informed him that there have been people at the auto dealership who had not been arrested. Tucci maintained surveillance of the house until 3:30 p.m., when he decided to enter the house. During that time Tucci did not attempt to contact the U.S. Attorney's Office or a federal magistrate to obtain a telephonic warrant.

Agent Tucci testified that based on his 26 years of experience working for the DEA, when a drug transaction involves a very large quantity of drugs the dealers arrange for some signal to confirm the success of the transaction. Tucci testified that he feared that Romero would learn of the arrest at the dealership when he did not hear from his co-conspirators and that Romero would try to flee or become dangerous. Tucci also suspected, based on his experience, that due to

the large amount of drugs that had been seized during the arrest, it was likely that there were more drugs inside Romero's house. For these reasons, Tucci decided to secure the apartment.

At the time of the entry Agent Tucci had not seen or heard of Jose Luis Romero before, and he did not have any information of any other drug activity or violent incidents having occurred at the 3830 Butternut address. His beliefs that Romero was waiting for a signal from Vaca and that Romero had more drugs inside the house were based on his experience as a DEA agent when dealing with transactions of very large amount of drugs.

Agent Tucci waited for other agents to arrive from the car dealership to help in the entry, and then proceeded in. They knocked on the outer door of the building and announced that they were federal officers. Then the agents went to the entrance of the second floor apartment. They heard voices and footsteps behind the door, and they forced the door of the apartment. The agents arrested Romero inside the house. Romero now moves to suppress the evidence seized at his house as result of that entry.

*Discussion*

It is apparent from the briefs submitted and the oral arguments that the parties do not dispute the relevant facts. Rather the parties dispute the legal significance of those facts under the Fourth Amendment. The Fourth Amendment prohibits warrantless entries into private residences in the absence of exigent circumstances. *Payton v. New York*, 445 U.S. 573, 588, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639 (1980). In this case the government admits that it entered the house of the Defendant without a warrant, but it claims that it did so under exigent circumstances. Exigent circumstances exist when there is compelling need for official action but no time to obtain a warrant. *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486 (1978); *United States v. Rivera*, 825 F.2d 152, 156 (7th Cir. 1987). The government argues that at the time of the entry the law enforcement officers had an objectively reasonable belief that there were drugs in Romero's house that

may be destroyed before they could obtain a search warrant. *See Rivera,* 825 F.2d at 156. The government has the burden of showing that such exigent circumstances existed that justified the warrantless entry. *United States v. Talkington,* 843 F.2d 1041, 1044 (7th Cir.1988).

The Defendant argues that the entry into Romero's apartment was not objectively reasonable because it was based on Agent Tucci's past experiences and not on specific facts of the present case. The Defendant claims that Tucci had no information to support his belief that there were more drugs inside Romero's apartment and that Romero was waiting to hear from his co-conspirators.

The Court disagrees with the Defendant's interpretation of the facts. The drug transaction in the case at hand involved a very large amount of drugs, with a street value of at least $1.5 million. Agent Dominguez had told Tucci that Romero was the person who controlled the source of the drugs. Tucci reasonably believed that he would find more drugs in Romero's house. *Cf. Rivera,* 825 F.2d at 156 (where the law enforcement officers had information of distribution of large amounts of drugs). Tucci knew that the drug sale was for a very large amount of drugs and in his experience the sale of such large amount would include some verification call. *Cf United States v. Sangineto–Miranda,* 859 F.2d 1501 (6th Cir.1988) (where the police reasonably believed that evidence will be destroyed when the accomplice who left to negotiate a drug sale would not return to the residence where the drugs were kept after he was arrested). The Court will not ask a law enforcement agent to disregard his years of experience in narcotics investigation and ignore what he knows of the modus operandi of transactions of large amounts of drugs. Accordingly, the Court finds that Agent Tucci reasonably believed that Romero was waiting to hear from his co-conspirators.

The Defendant cites *United States v. Buchanan,* 904 F.2d 349 (6th Cir.1990), and *United States v. Lynch,* 934 F.2d 1226 (11th Cir.1991) to support his argument that the facts of this case were not sufficient to warrant the belief that Romero would be waiting to hear from other co-conspirators after completing the drug sale. In both *Buchanan and Lynch,* law enforcement officers arrested suspects of drug crimes and then entered their houses or the houses of their accomplices without a warrant on the belief that destruction of evidence was imminent. In those cases, however, the police arrested the suspects when the latter left their houses for reasons unrelated to a drug transaction. In those two cases the courts found that the police had no reason to believe that their accomplices were expecting the defendants to return or report soon. In this case, however, Romero and his co-conspirators were in the middle of a large drug transaction, a transaction which had involved several meeting with different people in changing locations. In contrast with *Lynch* and *Buchanan,* in the case at hand an experienced officer could reasonably believed that Romero would learn of the arrests if he did not hear from his co-conspirators eventually.

 While the Court finds that the law enforcement officers in this case reasonably believed that there were drugs in Romero's house, and that at some point Romero would expect to receive a call or some other confirmation that the drug sale had been completed, the Court also finds that exigent circumstances did not exist in this case because the law enforcement officers had time to attempt to secure a telephonic warrant but they made no attempts to contact a federal magistrate or the U.S. Attorney's Office. Agent Dominguez and Defendant Vaca left Romero's house around 2:35 p.m. At that point Agent Tucci knew that Vaca supposedly had the 15 kg of cocaine, that they were leaving to complete the transaction at the auto dealership and that Romero allegedly controlled the source of the cocaine. At 3:00 p.m. Tucci learns that several co-conspirators have been arrested and that there were people at the dealership who had not been arrested. Tucci also confirmed that the suitcase Vaca brought out of Romero's house contained cocaine. Inexplicably, Tucci waited for another half hour, till 3:30 p.m., to enter the residence. During that time, the agents did not attempt to get a telephonic warrant to enter Romero's house.

The Court must determine then, whether the DEA agents had sufficient time to obtain a telephonic warrant but fail to do so. On this matter the Court feels constrained by the decision of the Seventh Circuit in *United States v. Patino,* 830 F.2d 1413, 1416 (7th Cir.1987). In *Patino* an agent observed a suspect wanted for armed robbery outside the defendant's apartment. The agent called for backup assistance, but the backup agents were thirty minutes away. The agent waited for the others joined him and then entered the defendant's apartment to arrest the suspect. The Seventh Circuit stated that the fact that the agent was able to wait for thirty minutes by itself demonstrated the lack of exigent circumstances. *Id.* The court remarked that it was inexplicable that the agent did not attempt to get a telephonic search warrant while he waited. The court concluded that in that case the agent had an adequate opportunity to obtain a telephonic search warrant and granted the motion to suppress.

Similarly in this case, the agents waited outside Romero's apartment for thirty minutes without attempting to obtain a warrant. The government did not respond during the hearing or in the briefs to the Defendant's argument that the government had adequate opportunity to obtain a telephonic warrant but failed to do so. The government presented no evidence as to why the agents did not attempt to obtain the warrant or that it would have been impossible to obtain such warrant in thirty minutes. *See United States v. Talkington,* 843 F.2d 1041, 1047 (7th Cir.1988) ("[I]t may not always be possible to obtain a telephonic warrant with sufficient speed. However, ... the government, in meeting its burden of showing exigent circumstances should demonstrate affirmatively that it was impractical to procure one."); *cf. United States v. Orozco,* No.89–CR–934, 1990 WL 118287, at *3 (E.D.N.Y. Aug.3, 1990) (where the agent testified that in his experience it took 1½ or 2 hours to obtain a telephonic warrant). The *Patino* court held that thirty minutes provided an adequate opportunity to obtain a telephonic warrant. This Court will not hold otherwise. For this reason, the Court grants the motion to suppress.

 Once the agents decided to enter Romero's house, the fact that they heard voices and footsteps after they announced the presence of federal officers did not justify a warrantless entry. Law enforcement agents cannot create exigent circumstances by knocking on the door and announcing their presence. *United States v. Rosselli,* 506 F.2d 627, 630 (7th Cir.1974); *see also United States v. Thomas,* 893 F.2d 482, 488 (2nd Cir.1990).

### Conclusion

For the foregoing reasons, the Motion to Suppress The Evidence Seized is granted.