# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3398

ERIC WILSON,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 1434—**Paul E. Plunkett**, *Judge.*

———————

ARGUED JULY 5, 2005—DECIDED JULY 18, 2005

———————

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Eric Wilson is serving a life sentence for being a leader of the Gangster Disciples, a continuing criminal enterprise. 21 U.S.C. §848. See *United States v. Smith*, 223 F.3d 554 (7th Cir. 2000), which affirms the convictions and sentences of Wilson and other defendants. Wilson contends in this proceeding under 28 U.S.C. §2255 that his trial lawyer furnished ineffective assistance by not reminding the jury that he is accountable for other gang members' crimes under the theory of *Pinkerton v.*

*United States*, 328 U.S. 640 (1946), only to the extent that they occurred after he joined the conspiracy himself. The instructions framed the *Pinkerton* issue correctly for the jury. Wilson's current lawyers say that his former counsel should have harped on these instructions and argued in the alternative for acquittal (contending that the evidence did not show that he ever joined or became a leader of the Gangster Disciples) and, if the jury thought otherwise, that he is not responsible for crimes that had occurred earlier.

Counsel devoted his closing argument to contending that Wilson should be acquitted outright—and for good reason. If the jury found that he joined and became a leader of the Gangster Disciples, then he was going to be convicted of the CCE count, and a life sentence seemed almost inevitable given the size of the organization. Section 848(b) makes life imprisonment mandatory for leaders of criminal organizations that distribute more than 1.5 kilograms of crack cocaine or have gross receipts exceeding $10 million in any 12-month period. The Gangster Disciples were well over both thresholds. So the main goal of the defense had to be to persuade the jury that Wilson never joined or led this criminal organization. Persuading the jury that Wilson did not join until late 1994 would have done him no good. True, it might have reduced the number of his substantive convictions. But these did not affect his sentence. He had to win acquittal of the CCE charge, or all hope was lost.

This means that counsel's strategy did not cause Wilson any prejudice. Had trial counsel done exactly what his current lawyers prefer, he would still be serving a sentence of life without possibility of parole. It also means that his lawyer lived up to professional requirements. See generally *Strickland v. Washington*, 466 U.S. 668 (1984); *Bell v. Cone*, 535 U.S. 685 (2002); *Rompilla v. Beard*, 125 S. Ct. 2456 (2005). Trial counsel pursued the theme that stood to do his client the most good.

There would be a better argument for ineffective assistance had counsel adopted the strategy that his current legal team prefers. Suppose trial counsel had made an argument along the lines of: "Wilson did not join the Gangster Disciples at all; but, if he did, he did not join until late 1994, and you should not deem him culpable for other gang members' crimes that preceded that date." A lawyer might reconcile these positions by reminding himself that the prosecutor bears the burden of persuasion and may fail to carry that burden in whole or in part. But lay jurors may well hear the argument as inconsistent and as conceding that Wilson *did* join by late 1994. If any of the jurors came away with that impression, Wilson would be worse off—not only because the probability of conviction would rise but also because the events of 1995, when Wilson was a "Governor" of the Gangster Disciples, are what led to the life sentence.

Defendants are entitled to present inconsistent arguments in criminal cases. See *Mathews v. United States*, 485 U.S. 58 (1988). But entitlement does not imply obligation. As several of the opinions in *Mathews* recognized, a defendant who advances an inconsistent argument may shoot himself in the foot by implicitly conceding part of the prosecution's case, or by making the defense seem unprincipled.

Many courts have concluded that a decision not to present inconsistent defenses cannot be condemned as ineffective. See, e.g., *Heaton v. Nix*, 924 F.2d 130, 133 (8th Cir. 1991); *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998); *Harich v. Dugger*, 844 F.2d 1464, 1470-71 (11th Cir. 1988) (en banc); *Hubbard v. Harley*, 317 F.3d 1245, 1260-61 (11th Cir. 2003). There is only one arguably contrary decision, which rests on a belief that the particular pair of defenses could not have increased the chance of conviction. See *Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999). We have our doubts, but it is unnecessary to pursue them. A rule

that counsel should argue all available defenses as a matter of course would make many clients worse off. The Supreme Court has abjured bright-line rules under the sixth amendment, so we cannot declare that counsel *never* have a constitutional obligation to present inconsistent defenses to criminal charges, but we are confident that Wilson's lawyer did not have such a duty.

Although the certificate of appealability was limited to the ineffective-assistance issue, Wilson asks us to expand it so that he may seek the benefit of *United States v. Booker*, 125 S. Ct. 738 (2005), and its precursors back to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We deny that request for two reasons. First, decisions in the *Apprendi* sequence do not apply retroactively on collateral review. See *Schriro v. Summerlin*, 542 U.S. 348 (2004); *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005); *Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002). Second, Wilson could not gain even if *Booker* and its forbears were to be applied retroactively, for his life sentence is a statutory floor, and *Harris v. United States*, 536 U.S. 545 (2002), holds that the sixth amendment permits judges to find facts that establish mandatory minimum sentences. See also *United States v. Duncan*, No. 04-1916 (7th Cir. July 1, 2005), slip op. 5-7.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*