In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-4708

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEITH COLLINS,

*Defendant-Appellant.*

Nos. 06-2746, 06-3741

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*
*Cross-Appellant*

*v.*

GREGORY MCNEAL,

*Defendant-Appellant/*
*Cross-Appellee.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 80—**Matthew F. Kennelly**, *Judge.*

———————

ARGUED NOVEMBER 7, 2007—DECIDED DECEMBER 14, 2007

———————

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*.  A jury convicted the defendants of federal drug offenses, and the judge sentenced Collins to 144 months in prison and McNeal to 240 months. The defendants appeal, and the government cross-appeals with regard to McNeal, arguing that his sentence, though very long, is not long enough.

Concerning Collins's appeal, we can be brief. Apart from a perfunctory and indeed frivolous attack on the sufficiency of the evidence, Collins's lawyer, M. Engin Derkunt of the Texas Bar, devotes his entire brief to arguing that Title 18—the federal criminal code—is unconstitutional because of supposed irregularities in its enactment. We recently described an appeal in which Derkunt made the same argument on behalf of another client as "unbelievably frivolous." *United States v. States*, No. 06-2345, 2007 WL 2768906 (7th Cir. Sept. 24, 2007) (per curiam). We affirm the judgment against his current client, without prejudice to the client's seeking post-conviction relief on the ground of ineffective assistance of counsel, and we order Derkunt to show cause why he should not be sanctioned for professional misconduct in this court. We are also sending a copy of this opinion to the Texas bar disciplinary authorities. His quixotic crusade—"Title 18: The U.S. Criminal Code—Void *ab initio*," www.nocriminalcode.us (visited Nov. 7, 2007)—is a profound disservice to his clients.

We turn to McNeal's appeal and the government's cross-appeal. The Drug Enforcement Administration and the Chicago police had strong grounds for suspecting that McNeal was selling cocaine from his house. A team of DEA officers and uniformed police officers approached the house, carrying a battering ram. They knocked on the

front door and heard movement within and a voice say "the police are at the door." They waited at least 20 seconds after knocking, then broke down the door with their battering ram, handcuffed McNeal, searched the house, and found drugs that were then introduced in evidence against McNeal at his trial. He argues that the evidence should have been suppressed (and that therefore he is entitled to a new trial) because the officers had no excuse for failing to get a warrant, which they could have done, within minutes, by applying by telephone or email. See Fed. R. Crim. P. 41(d)(3)(A).

Police may not search a person's home without a warrant unless there is an emergency, *Welsh v. Wisconsin*, 466 U.S. 740, 748-50 (1984); *Payton v. New York*, 445 U.S. 573 (1980); *Michigan v. Tyler*, 436 U.S. 499, 509 (1978); *Hadley v. Williams*, 368 F.3d 747, 750 (7th Cir. 2004)—what in legal jargon, because our profession disdains plain speech, are called "exigent circumstances." The district judge ruled that the officers reasonably believed that there was an emergency—that McNeal or his accomplices were about to destroy evidence. The judge thought it significant that the officers heard not only movement within the house, but the sound of "running feet," and the government repeats this in its brief—which it should not have done, for there is no evidence that the officers heard the sound of running feet. (In a post-argument submission, the government acknowledged the mistake.) So we are left with a group of people appearing at McNeal's door, several in police uniform, and a person in the house observing unsurprisingly that "the police are at the door," together with a sound of movement, not further defined— unless someone was standing right inside the door when the police knocked, there would have had to be movement within before the door could be opened.

No doubt at some point, knowing there were people in the house, knowing it was a drug house, the officers would be reasonable in inferring from the failure to answer the door that the persons inside were busy destroying evidence, or perhaps even arming themselves to resist entry by the police violently. *United States v. Robles*, 37 F.3d 1260, 1263-64 (7th Cir. 1994); *United States v. MacDonald*, 916 F.2d 766, 770-71 (2d Cir. 1990) (en banc). The Supreme Court has suggested that the police need not hold off for more than 15 or 20 seconds. *United States v. Banks*, 540 U.S. 31, 37-38 and n. 5 (2003). Maybe 10 seconds are enough. *United States v. Cline,* 349 F.3d 1276, 1288-90 (10th Cir. 2003). Maybe less, as in *United States v. Markling*, 7 F.3d 1309, 1318 (7th Cir. 1993) (7 seconds), where the knock was on the door of a small room in a motel, or *United States v. Crippen*, 371 F.3d 842, 843-44 (D.C. Cir. 2004) (4 seconds), where the police were afraid that the occupant had a rocket launcher; if a launcher were fired at an officer "standing in the doorway . . . [the rocket] would go straight through [him]."

But the government contended forcefully at argument in our case that *no* interval between knocking on the door and breaking in with a battering ram is ever required—not a second. It is enough if the officers have a strong reason to believe that illegal drugs are in the house, because there is always a danger that as soon as drug dealers realize that the police are at the door they will start destroying evidence. Again, the government retracted this extreme position in its post-argument submission. And rightly so, for, if accepted, it would effectively nullify any requirement of a warrant to search a house. All the police would need would be probable cause to believe that the house was occupied and contained contraband or evidence

of crime. The Supreme Court's rule that a warrant is required for the search of a home unless there is an emergency would be eviscerated, along with the requirement of knocking before entering (again, unless there is an emergency). *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). For there is no purpose in knocking if the occupant isn't given a chance to answer the door.

The exception for emergencies is important. Suppose that a patrolling police officer hears blood-curdling screams coming from a house. He runs to the door and tries to open it, but it is locked, so he barges in. He could not have waited till he could get a warrant, even if that would have taken only a few minutes. Nor would he have to knock before entering. *Leaf v. Shelnutt*, 400 F.3d 1070, 1083-85 (7th Cir. 2005); *United States v. Hardy*, 52 F.3d 147, 149-50, n. 3 (7th Cir. 1995). But an emergency cannot be presumed in every case in which police barge into a person's home unannounced. The government has presented no evidence that, like mink devouring their young when they hear a loud noise, criminals always (or at least in the vast majority of cases) set about to destroy evidence whenever the police knock on the door. Doubtless it is a common reaction, but how common we are not told.

Many cases say that law-enforcement officers cannot be allowed to manufacture an emergency and then use the emergency to justify dispensing with the procedures ordinarily required to search a home. *United States v. Napue*, 834 F.2d 1311, 1327 n. 17 (7th Cir. 1987); *United States v. Coles*, 437 F.3d 361, 368-70 (3d Cir. 2006); *United States v. Chambers*, 395 F.3d 563, 566 (6th Cir. 2005); *United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993). But the "manufacturing" metaphor is misleading. It is true that in the present case, in contrast to our hypothetical case of

screams from within, the officers had time to obtain a warrant and no reason to think before they arrived at McNeal's door that anyone inside the house knew the police were approaching. They had time at least to initiate the process of obtaining a warrant by phone or email, and if something happened before the warrant was issued to create a grave concern about the possible destruction of evidence they could have moved in at once. But nothing happened; and it is the fact that nothing happened, rather than the "manufacture of exigent circumstances," that undermines the government's position.

For there is a sense in which any time police knock and announce their presence and the occupants respond in a suspicious manner (such as the "running feet" *not* heard in this case), the police can be regarded as the "manufacturers" of the emergency that then justifies their barging in and searching the house and arresting the occupants. That would not justify suppression of the evidence found in the search. *United States v. MacDonald*, *supra*, 916 F.2d at 771. The conduct of the police would be a "but for" cause (that is, a necessary condition) of the emergency but it would not be culpable. They would be doing nothing wrong, because there is no legal requirement of obtaining a warrant to knock on someone's door. For that matter there is nothing to forbid the police to lug the battering ram with them in open view, anticipating the worst. But the risk they take in proceeding in such a fashion is that the emergency will not materialize— that the occupant of the house will calmly open the door and ask to see their warrant—that there will be no sound of "running feet," or other sounds or sights signifying that evidence is about to be destroyed. The further risk is that no one will answer the knock and the govern-

ment will be unable to prove that the police knew the house was occupied.

The government argues that the police waited 30 or even 45 seconds before breaking down McNeal's door. The judge, however, as the government fails to acknowledge, found only that it was more than 20 seconds. (The government continues to insist that it was at least 30 seconds.) Even 20 seconds may be a long time to answer a knock on the door by the police when someone is heard within acknowledging that the police are at the door. But the government does not argue that a 20-second interval is long enough to justify entering the house forcibly. They do not argue for a 30-second or a 20-second or a 15-second rule, though the case law we cited might well be thought to justify such a rule when there is probable cause to believe that a house contains drugs and occupants. The government in its brief argues that merely knowing that there are drugs in a house creates an emergency that justifies dispensing with a warrant. In its post-argument submission the government softens its position by arguing (belatedly) for the first time that the words "the police are here" that they heard was a "yell" which they "could reasonably interpret . . . as a warning" to other occupants of the house to destroy the drugs. The district judge did not find that the police had heard a "yell" or that what they did hear could be interpreted as a warning.

In short, if police hear a crime being committed within a house (and spoliation of evidence is a crime), then they can enter immediately, without knocking; if they do not hear a crime (more precisely, if they do not have probable cause to believe a crime is in progress), they have to get a warrant. The government has failed to show that

in this case the police had probable cause to believe that evidence was being, or was about to be, destroyed when they entered.

The government has a backup position. When the officers handcuffed McNeal, they asked him for consent to search the house and he gave it. He argues that his consent was given involuntarily, that it was a product of intimidating circumstances. The government ripostes that since he had been "caught red-handed" he "had a choice—and at that instant, he decided to try to help himself by cooperating with the investigation," and thus his consent was voluntary. That misses the point. He was "caught red-handed" only because the police had barged in and were searching the house. The jig was up. But it was up because of the officers' unlawful act, and they cannot use their unlawful act as the basis for an inference of consent, *United States v. Robeles-Ortega*, 348 F.3d 679, 683-85 (7th Cir. 2003); *United States v. Jones*, 214 F.3d 836, 838-39 (7th Cir. 2000); *United States v. Snype*, 441 F.3d 119, 132-33 (2d Cir. 2006), just as a robber cannot defend by reference to the eagerness with which his victim chose to surrender his money rather than his life. Suppose the police had accosted McNeal on the street and asked him for consent to search his home. It is doubtful that he would have given it, and the government does not bother even to argue that he would have. He consented to the choice at a time when he had no real choice, and he had no real choice because of police misconduct.

So the evidence of the drugs found in the house should have been suppressed, and so McNeal's conviction and sentence must be vacated. But should he again be convicted, we point out that the government is correct to argue on cross-appeal that the district judge was mistaken

to think that the imposition of a mandatory minimum sentence cannot be based on a finding of drug quantity by the district judge. It can be. *Harris v. United States,* 536 U.S. 545 (2002); *United States v. Knight*, 342 F.3d 697, 713-14 (7th Cir. 2003). The district court may have thought that the ubiquitous *Booker* decision (*United States v. Booker*, 543 U.S. 220 (2005)), in expanding the sentencing discretion of the district judges, abrogated the rule of *Harris*, but we have held that it did not. *Wilson v. United States*, 414 F.3d 829, 831-32 (7th Cir. 2005); *United States v. Duncan*, 413 F.3d 680, 683-84 (7th Cir. 2005).

The judgment in Collins's case is affirmed, in McNeal's case reversed, and McNeal's case is remanded for further proceedings consistent with this opinion.

A true Copy:

     Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
