# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 19, 2012

## STATE OF TENNESSEE v. HOWARD LAVELLE TATE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-75      Steve Dozier, Judge**

---

**No. M2010-02555-CCA-R3-CD Filed December 17, 2012**

---

The defendant, Howard Lavelle Tate, was convicted of two counts of the sale of over 0.5 grams of a schedule II controlled substances, both Class B felonies, possession of over 26 grams of a schedule II controlled substance with intent to sell, possession of marijuana, and possession of drug paraphernalia.  The defendant received an effective sentence of forty-seven years.  The defendant challenges his convictions, asserting that the trial court erred by (1) admitting evidence seized from his home without a search warrant; (2) admitting evidence that was improperly preserved with no established chain of custody; (3) allowing the State to present inconsistent evidence regarding the substance sold; (4) allowing the State to add an additional count to the indictment; and (5) ordering consecutive sentences.  After a thorough review of the record, we conclude that the trial court erred in denying the motion to suppress and the evidence seized as the result of the unlawful search should have been excluded from consideration by the jury.  Therefore, the convictions that resulted therefrom, possession of drug paraphernalia, possession of marijuana, and possession of schedule II controlled substance with intent to sell are reversed and remanded.  The defendant's convictions on two counts of sale of over 0.5 grams of schedule II controlled substance and sentences are affirmed.

**Tenn. R. Ap. P. 3 Appeal as of Right; Judgments of the Criminal Affirmed in Part; Reversed and Remanded in Part**.

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Howard Lavelle Tate.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Rachel Marie Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural History**

The defendant's convictions are the result of two sales to different confidential informants. During the first sale on July 18, 2007, the confidential informant purchased crack cocaine from the defendant outside a business in Madison, Tennessee. The police observed the sale from a distance and followed the defendant to a gas station. Because undercover police Sergeant Robert Fidler observed that the defendant had not only a female passenger in the passenger seat but also an unrestrained child in the back seat, he radioed for a marked car to stop the defendant; the police consequently discovered the defendant's identity and that of his passenger, his wife, Marjorie Sloan.[1]

The second sale occurred on July 23, 2007 in the parking lot of a motel in Goodlettsville, Tennessee, to a different confidential informant. After observing the sale from a distance, police followed the defendant to his apartment. Detective Yannick Deslauriers observed the defendant enter one of two apartments but was unable to tell which one. The defendant left shortly thereafter and went to the parking lot of a Taco Bell. Detective Deslauriers remained in his vehicle, which was directly in front of the two apartments he had seen the defendant approach. The defendant returned to the apartment complex and was arrested in the parking lot. Detective Jeffrey Tharpe testified that he searched the defendant and recovered the money used to purchase the cocaine; he then read the defendant his rights. Detective Tharpe testified that during the five to ten minutes that he was speaking with the defendant in the parking lot, the defendant initially told him that he did not live at the apartment where he was being arrested but had been visiting his wife. The defendant then admitted that he lived there. Detective Tharpe testified that Sergeant Fidler and Detective Deslauriers informed him additional narcotics had been found, and he decided to take the defendant into the apartment to finish his paperwork. Detective Deslauriers testified at the suppression hearing that, prior to the consummation of the sale, police were "somewhat aware of where he was probably going to be laying his head, over on Berkley Drive." At trial, he testified that he followed the defendant to the apartment complex "which we later found out is where he was living."

_____

[1] The defendant's wife is alternately referred to as Ms. Sloan and Ms. Tate throughout the record. On the consent to search form, her name appears as "Marjorie D. Sloan," and her signature gives her name as "Marjorie Tate / Sloan." We have decided to refer to her as Ms. Sloan.

At the suppression hearing, Detective Deslauriers testified that during the arrest, he could see Ms. Sloan look out the window of the apartment towards the area of the parking lot where the defendant was being arrested. He testified that she then "ran into a back bedroom." Detective Deslauriers alerted Sergeant Robert Fidler, who testified that he was afraid Ms. Sloan would destroy evidence located inside the home. Detective Deslauriers asked Sergeant Fidler, who had the defendant's house key, to accompany him to the apartment. Detective Deslauriers testified that they knocked on the door, did not receive an answer, and entered, using the defendant's house key, which was in Sergeant Fidler's possession.[2] Sergeant Fidler also testified that they knocked and announced they were the police and that Ms. Sloan did not open the door, although he did not remember if the door was unlocked or if the police used the defendant's key to enter. Ms. Sloan came towards the doorway and met the police after they had entered her home. She cooperated with them and took Sergeant Fidler to a bedroom where he recovered a crown royale bag containing four bags of a white, rock-like substance. She also showed him a container with two bags of marijuana and a small bag of powder cocaine. Ms. Sloan then pointed out a kitchen drawer which contained two sets of digital scales. Ms. Sloan signed a consent to search after the police had recovered the evidence. A marijuana grinder and pipe were also recovered from the living room.

At the time of the suppression hearing, the defendant had not been charged with any crimes related to the July 18, 2007 sale. The defendant's counsel cross-examined Detective Deslauriers at the suppression hearing regarding prior testimony he gave that the July 23, 2007 sale had occurred in Madison, Tennessee. Detective Deslauriers testified that he had probably been confused because the police had monitored multiple sales made by the defendant, and the defendant's attorney objected to the testimony. The defendant's attorney also objected to Detective Deslauriers's testimony that he recognized Ms. Sloan from prior sales. In 2009, a new indictment was returned, charging the defendant with one additional count of sale of a controlled substance occurring on July 18, 2007.

At the suppression hearing and at trial, the defendant explored various inconsistencies in the State's evidence. The defendant questioned the witnesses regarding the money used to purchase the cocaine. At the hearing, Detective Deslauriers testified that during the July 23 sale, he provided previously photocopied buy money to the confidential informant. Based on the photocopy, he testified that he believed he gave the informant $100. Detective Deslaurier and Sergeant Fidler testified that if the buy money was not recovered, officers would have to fill out a 330 form, but if it was recovered, they would not. Detective

_____

[2] On cross-examination, Detective Deslauriers stated that the supplemental report did not indicate Sergeant Fidler used a key to enter the home and that this was a mistake, and that his prior testimony at a preliminary hearing that Ms. Sloan gave consent to enter the home was also a mistake.

Deslauriers testified that the police would photocopy sheets of money and circle the bills being used in a particular transaction. Sergeant Fidler testified that he checks out five to ten thousand dollars at a time. Detective Deslauriers testified that he believed that the five circled $20 bills were given to the informant. A photocopy of four $20 bills recovered from the defendant was included in the exhibits from the hearing. At trial, Detective Tharpe testified that the money might have been "marked and it could have been that we were going to attempt to buy more from the defendant, just check and see if he had any additional on him at the time of the buy." Both officers ultimately testified that the purchase was $80 worth of cocaine.[3] Detective Tharpe acknowledged that he did not in the paperwork distinguish the buy money from the total sum of $651 which was seized from the defendant's person upon arrest. The photocopies were introduced at trial, but the actual cash was not.

The defendant also explored inconsistencies in the evidence regarding the substance purchased on July 23, 2007. After meeting the defendant on July 23, 2007, the confidential informant returned with what Detective Deslauriers testified was a yellow rock substance which field tested positive for cocaine. Detective Deslauriers testified that he might have put it in an evidence bag but probably put it in the cup holder of his car. All of the paperwork and the testimony of both officers reflect the fact that the substance was rock-like.

Denotria Patterson, a forensic scientist at the Tennessee Bureau of Investigation, testified at both the suppression hearing and the trial. According to Ms. Patterson's notes, she received as evidence in the defendant's case one large plastic bag containing four smaller bags containing a total of 111.1 grams of rock-like cocaine, two plastic bags containing 2.8 grams of powder cocaine, and two plastic bags containing 11.2 grams of marijuana. Detective Deslauriers acknowledged he had never previously identified the substance bought by the informant as powder cocaine. At trial, Ms. Patterson stated she initially classified the substance as powder based on a visual inspection; she also testified that crack cocaine may sometimes come in a "fine powder" and that the bag of purchased cocaine was not the same texture as the bag of powder cocaine recovered from the apartment because it was more compressed rather than a loose powder. At the suppression hearing, both Detective Deslauriers and Detective Tharpe testified that they had previously seen powder cocaine in a compressed form, in which it would appear to be a white or yellowish rock substance. Detective Deslauriers and Sergeant Fidler testified that because an incident report or property sheet only has one place to identify the location, the location of evidence would have been

_____

[3] Detective Deslauriers, when confronted with the "before" photocopy at the suppression hearing, testified that he believed the purchase was for $100 of cocaine. At trial, he testified that he understood the deal to be "either a hundred or $80 worth of crack cocaine. And it was $80 worth of crack cocaine that we were to purchase that day." Detective Tharpe testified at trial the purchase was for $80 of cocaine. The transcript, also shows he stated that "$88 of [the recovered money] was the photocopied buy money."

filled out as the defendant's address even though the sale took place at the motel.

The defendant also questioned witnesses regarding discrepancies in the weight of the narcotics. Detective Tharpe testified that his supplemental report included the cocaine purchased July 23, 2007, which was described as 2.0 grams of a yellow rock substance; this report was not in evidence. An inventory of seized property likewise had the weights recorded, identifying a large plastic bag with four smaller bags of cocaine weighing 29.9 grams, 28.8 grams, 29.3 grams, and 29.2 grams; two bags of marijuana weighing 4.0 and 7.8 grams; and one bag of white powder weighing 2.1 grams. The bag of cocaine obtained from the informant is listed without a weight. Detective Tharpe testified he added the weight of the cocaine obtained from the informant to the crack cocaine recovered from the apartment to arrive at the totals listed on a notice of property seizure which identified the drugs as 118.5 grams of crack cocaine, 2.1 grams cocaine, and 11.8 grams marijuana. Ms. Patterson, on the other hand, classified 111.1 grams as crack cocaine; this did not include the substance obtained from the informant. Ms. Patterson testified she weighed the narcotics without the plastic bags. Ms. Patterson weighed the bags she had classified as powdered cocaine, and recorded weights of 1.08 grams and 1.8 grams.

At the conclusion of the trial, the jury found the defendant guilty on all counts, and the trial court sentenced him to serve twenty-four years in prison for the sale of a controlled substance in count one; twenty-four years for possession with intent to sell over 26 grams of a schedule II controlled substance in count two; four years for possession of marijuana in count three; 11 months and 29 days for possession of drug paraphernalia in count four; and twenty-three years for the second count of the sale of over 0.5 grams of a schedule II controlled substance. The court ordered the two counts for sale of a controlled substance to be served consecutively for an effective sentence of forty-seven years. The defendant appeals his convictions and sentences.

## II. Analysis

### A. Warrantless Search

The defendant asserts that the trial court erred in failing to suppress the narcotics and drug paraphernalia recovered during the search of his apartment. The defendant argues that there was no exigency because officers did not have a reasonable belief in the existence of exigent circumstances and because any exigency was created by the police officers themselves. The State counters that Ms. Sloan's movements created an exigent circumstance which justified the warrantless entry.

A trial court's factual findings on a motion to suppress will be upheld on appeal unless

the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* Furthermore, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id.* "When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions and the trial court's findings of fact are subject to de novo review." *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007). Furthermore, this court is not bound by the trial court's conclusions of law. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution guard against unreasonable searches and seizures. The purpose of these prohibitions is to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *Randolph*, 74 S.W.3d at 334 (quoting *Camara v. Mun. Court*, 387 U.S. 523, 528 (1967). A warrantless entry into a home is "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Furthermore, "Tennessee cases have been somewhat more restrictive in construing Article I, § 7 of the State Constitution than have federal cases construing the Fourth Amendment." *State v. Jennette*, 706 S.W.2d 614, 620 (Tenn. 1986).

Exigent circumstances, however, provide an exception to the warrant requirement. *Berrios*, 235 S.W.3d at 104. "Exigent circumstances arise where 'the needs of law enforcement [are] so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" *State v. Meeks*, 262 S.W.3d 710, 723 (Tenn. 2008) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). One such exigency is the imminent destruction of evidence. *Meeks*, 262 S.W.3d at 723. To justify a warrantless search, circumstances must give rise to "an objectively reasonable belief that there was a compelling need to act and insufficient time to obtain a warrant." *Id.* The exigency of the circumstances is evaluated based upon the totality of the circumstances known to the State at the time of the search, and the State must rely on specific and articulable facts and the reasonable inferences to be drawn from them. *Id.* at 723-24. The circumstances are exigent only when the search is imperative. *Id.* at 723. The State bears the burden of showing the exception to the warrant requirement. *Berrios*, 235 S.W.3d at 105.

In *State v. Carter*, 160 S.W.3d 526, 532 (Tenn. 2005), the Tennessee Supreme Court found that police had created the exigency "by approaching the defendants' residence and

alerting the defendants to the presence of the deputies." Accordingly, the Court concluded that the search violated both the federal and state constitutions. In *Kentucky v. King*, 131 S.Ct. 1849 (2011), however, the United States Supreme Court rejected an interpretation of the United States Constitution that would discount an exigency which came about as a result of police knocking on the door of a residence and announcing their presence. Under federal constitutional safeguards, an exigency becomes police-created only when the government engages or threatens to engage in conduct that violates the Fourth Amendment. *Id.* at 1858. However, we need not consider whether the Tennessee Constitution provides broader protection than the United States Constitution on this point, because we find that the State failed to carry its burden of proving an exigency.

We begin with the fact-specific inquiry regarding what circumstances are sufficient to justify the police in concluding that evidence is in imminent danger of destruction. The Seventh Circuit has concluded that

> [t]he sound of someone walking around, for example, or a voice that announces, "The cops are here," is not enough by itself. But other sights and sounds – toilets flushing, a door slammed, people running, an obvious lie by the person answering the door, or efforts to remove contraband from the house – may be evidence that there is an emergency that calls for an immediate, warrantless intrusion.

*United States v. Etchin*, 614 F.3d 726, 734 (7th Cir. 2010).

After the United States Supreme Court in *King* concluded that a police-created exigency required an actual or threatened violation of the Fourth Amendment, the case was remanded to the Kentucky Supreme Court, which found that there were no exigent circumstances, as police had merely smelled marijuana, knocked and announced their presence, and heard "things being moved." *King v. Commonwealth*, __ S.W.3d __, 2012 WL 1450081, at *1 (Ky. 2012). "In fact, the sounds as described at the suppression hearing were indistinguishable from ordinary household sounds, and were consistent with the natural and reasonable result of a knock on the door." *Id.* at *3; *see also*, *e.g.*, *United States v. Delguyd*, 542 F.2d 346, 351-52 (6th Cir. 1976) (finding rustling noises and toilet being flushed sufficient to show exigent circumstances); *Stackhouse v. State*, 468 A.2d 333, 342 (Md. 1983) (finding circumstances were not exigent when the defendant's sister, who had lied to the police, was present in the home). *But see United States v. Gardner*, 553 F.2d 946, 948 (5th Cir. 1977) (concluding that circumstances were exigent when five police cars arrived and several officers arrested the defendant outside the home and police knew that someone who might be the defendant's wife and partner in the drug trade was in the home).

Whether exigent circumstances were present here is a close question. Detective Deslauriers observed Ms. Sloan look out the window at the parking lot where the defendant was being detained. He recognized Ms. Sloan as the individual who had been the passenger in the car on a previous drug sale. Ms. Sloan went towards the back of the apartment. Nevertheless, "the totality of the circumstances known to the State at the time of the search" do not support a conclusion that exigent circumstances compelled the warrantless search. At the time of the entry, police did not know that the apartment was the defendant's residence, although they knew that he had visited either that apartment or the one beside it. They did not know that narcotics were present in the apartment, although they knew that he had stopped at the apartment after selling drugs to the confidential informant and before encountering another individual in the parking lot of a Taco Bell. Although they may have suspected that the defendant had obtained drugs from a residence at the complex, and while they may have suspected that the residence he had stopped at was the one in which Ms. Sloan could be seen, mere speculation is inadequate to show exigency. *Meeks*, 262 S.W.3d at 723.

However, and most importantly, Ms. Sloan's actions inside the home were ambiguous. Because police had not approached the apartment, there was no reason to think that she was attempting to elude capture or destroy evidence. Detective Deslauriers's testimony describes her moving from the front of her home to the back. Such an action is "indistinguishable from ordinary household" movements. *King v. Commonwealth*, 2012 WL 1450081, at *3. "The government has presented no evidence that, like mink devouring their young when they hear a loud noise, criminals always (or at least in the vast majority of cases) set about to destroy evidence whenever the police knock on the door." *United States v. Collins*, 510 F.3d 697, 700 (7th Cir. 2007) (concluding there were no exigent circumstances when an occupant was heard to observe, "The police are at the door," and movement was heard in the home). We conclude that Ms. Sloan's act did not threaten the imminent destruction of evidence and officers did not have an objectively reasonable belief that there was a compelling need to act or that a search was imperative. Accordingly, the State has not shown exigent circumstances which justify the warrantless entry.

The exclusionary rule bars evidence either directly or indirectly obtained from an unconstitutional search or seizure. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The State does not argue that Ms. Sloan's consent was obtained independently of the warrantless entry therefore, the evidence seized from the defendant's residence must be suppressed. Accordingly, the defendant's three convictions that resulted from the evidence obtained from the residence are reversed and remanded.

Further our review reveals that the constitutional error ( resulting in the reversal of three of the defendant's convictions) was harmless beyond a reasonable doubt in reference to the defendant's two convictions for selling schedule II controlled substances. Evidence

presented in these two convictions came from confidential informants, police officers and proof of the substance sold. The two sales were not associated with the defendant's residence and one occurred at a different time and place.

## B. Improperly Preserved Evidence

The defendant claims the trial court erred by allowing the introduction of evidence that was improperly preserved and had no established chain of custody. The defendant asserts that under *State v. Ferguson*, 2 S.W.3d 912, 915 (Tenn. 1999), the State had a duty to preserve both the buy money and the narcotics supporting the conviction for sale of a controlled substance in count one. He contends that the State failed to preserve the narcotics when Detective Deslauriers placed the bag into the cup holder of his car; when the police listed the defendant's home address rather than the motel as the location on the report; because of a discrepancy in weight; and because of Ms. Patterson's report classifying the narcotics as powder rather than crack. The defendant further claims that the State failed to establish a proper chain of custody for the narcotics. In addition, the defendant claims that the buy money was inadequately preserved because no officer testified to having generated the copy of the buy money made prior to the July 23 sale; because the police, rather than setting aside the money recovered from the defendant, created a photocopy, and because of Detective Deslauriers' testimony at the suppression hearing that he believed he gave $100 to the informant. The State counters that this issue is waived.

The State correctly notes that, in his motion for a new trial, the defendant limited this issue to the "buy money." His written motion refers only to the evidence admitted regarding the money recovered from the defendant, and at the hearing, defense counsel limited his argument to the "buy money." Moreover, while the defendant raised the issue at the suppression hearing, the trial court specifically deferred hearing it. Both parties then briefed the issue, but the trial court, in its order denying the motion to suppress, twice noted that the parties had agreed to resolve the chain of custody and *Ferguson* issues "at trial or in a separate motion hearing." No separate hearing is part of the record. At trial, the defendant did not object to the introduction of the photocopied cash which the police had used to purchase the narcotics. The narcotics related to the July 23 sale were likewise introduced – first marked for identification purposes during the testimony of Sergeant Fidler, and then introduced into evidence during the testimony of Detective Deslauriers. The defendant raised no objection. Likewise, the defendant did not object to evidence based on chain of custody at trial. "This Court is not bound to grant relief to a party who fails to take 'whatever action was reasonably available to prevent or nullify the harmful effect of an error,'" by neglecting to lodge a timely objection. *State v. Hugueley*, 185 S.W.3d 356, 369 (Tenn. 2006) (citing Tenn. R. App. P. 36(a)). The trial court did not make any findings required in *Ferguson* because the issue was not heard until the cursory examination in the motion for a new trial.

We conclude that the issue is waived.

## C. Inconsistent Evidence

The defendant next asserts that it was error to allow evidence regarding the substance supporting count one because of inconsistent testimony regarding the weight and form of the substance. In his argument, defense counsel confuses the 0.9 grams recovered from the July 18, 2007 purchase with the substance recovered from the July 23, 2007 purchase. Detective Tharpe testified that the cocaine purchased on July 23, 2007 was approximately 2 grams, and that this cocaine was added to the bags containing 29.9 grams, 28.8 grams, 29.3 grams, and 29.2 grams of cocaine recovered from the apartment for a total of 118.5 grams sent to the laboratory for testing. The paperwork also reflects that 2.1 grams of powdered cocaine recovered from the apartment was sent to the lab for testing. Ms. Patterson classified the purchased cocaine as powder and found that the bags of powdered cocaine weighed 1.08 grams and 1.8 grams. She did not identify which weight was associated with Exhibit 10 containing the substance recovered from the informant.

While the defendant brought out these discrepancies on cross-examination in order to cast doubt on the reliability of the State's proof, the defendant did not object to the testimony of Detective Tharpe or any other witness[4] or to the introduction of the evidence. Tennessee Rule of Evidence 103(a)(1) precludes error premised on a ruling admitting evidence unless "a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context." Furthermore, the defendant cites to no authority showing that evidence must be excluded because it contains some inconsistency. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). We conclude that the State correctly argues that this argument is waived. These inconsistencies in the evidence go to its weight rather than admissibility.

## D. Prosecutorial Misconduct

The defendant also alleges that the return of a second indictment with the addition of count five (relating to the July 18, 2007 sale) was prosecutorial misconduct which could have affected the verdict to the prejudice of the defendant. As the State correctly points out, however, the defendant cites no authority that the State may not initiate a valid prosecution,

---

[4] While the defendant correctly identified the agent responsible for testing the substance of the July 23, 2007 sale, the State's brief addresses the admissibility of the testimony of the agent who conducted testing on the crack cocaine recovered on July 18, 2007.

and nothing in the record shows the defendant alleged misconduct at the trial level prior to asserting it as a ground for relief in his motion for a new trial. In fact, the defendant repeatedly objected to the admission of evidence related to the July 18, 2007 sale at the suppression hearing on the grounds that the defendant had *not* been charged with the crime that was ultimately added as count five. This issue is without merit.

## E. Consecutive Sentencing

At the sentencing hearing, the State argued that consecutive sentences should be imposed based on the defendant's extensive criminal history and the fact that he was a professional criminal. *See* Tenn. Code Ann. § 40-35-115. The defendant argued for concurrent sentences, noting that "while [the defense] cannot disagree that [the defendant] has been in an amount of trouble basically since he turned 18," the defendant's criminal activity had not been violent for approximately twenty years. The trial court made no findings at the sentencing hearing, but in a written order directed counts one and five to be served consecutively.

Tennessee Code Annotated section 40-35-115 permits the imposition of consecutive sentences if the court finds by a preponderance of the evidence that one of several factors applies, including that the defendant is an offender whose record of criminal activity is extensive or is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood. *See* Tenn. Code Ann. § 40-35-115(b)(1)-(2). While the trial court did find that the defendant had a previous history of criminal convictions as an enhancement factor, the court never made the findings mandated by Tennessee Code Annotated section 40-35-115. We review the imposition of consecutive sentences for an abuse of discretion, *State v. Hayes*, 337 S.W.3d 235, 266 (Tenn. Crim. App. 2010), and "a presumption of reasonableness should be afforded to a sentence within the appropriate statutory range," *State v. Bise*, __ S.W.3d __, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *18 (Tenn. 2012).

We conclude that the record supports the trial court's decision to impose consecutive sentencing. The trial court's order, although not explicitly characterizing the defendant's criminal history as "extensive," notes the defendant has been convicted of three prior felonies and nine misdemeanors and admitted involvement in other drug sales. The defendant acknowledged that he had a lengthy criminal history. Accordingly, the imposition of consecutive sentences was supported by the defendant's extensive record of criminal activity. Furthermore, the record demonstrates that the defendant knowingly devoted his life to criminal acts as a major source of livelihood. The defendant points to three jobs he has held, but none of them lasted for more than a few months and only one predates the offenses. Detective Tharpe's testimony at trial was that the defendant admitted selling cocaine and

stated that he did it to support his family financially.  At trial, the State introduced into evidence certain telephone calls made by the defendant, in which he admitted selling drugs and stated he was "zoned in on money."  Although we reversed and dismissed three charges , we nevertheless conclude that the record supports consecutive sentencing on the two sale convictions..

## CONCLUSION

Based on the foregoing reasoning, we conclude the trial court erred in admitting the evidence recovered from the defendant's home without a search warrant.  Therefore, the three convictions that resulted therefrom are reversed and remanded.  The defendant's two Class B felony convictions are affirmed as well as the consecutive sentences.

_____

JOHN EVERETT WILLIAMS, JUDGE